All right, our third case for this morning is United States v. McKenzie. Whenever you're ready, Mr. Morris, we'll hear from you. I'm going to begin with what this case is not. I would assume after reading the briefs that you think of this case as perhaps a loophole case, that we're looking for some technicality. And the fact of the matter here is that the government could have charged Mr. McKenzie with a variety of crimes. There was more than enough evidence for these crimes. So can I tell you what bothers me about your theory? It seems to me that it's quite common in the drug business for there to be intermediaries. And so, you know, the intermediary might be the person who's driving a car with a locked trunk or might be somebody who's handling, as in this case, you know, a box that's locked and they don't have the key. All kinds of ways that you can, you know, locked suitcase. And the fact that you can't readily unlock the thing doesn't strike me as all that unusual. And yet they're part of the distribution chain. It's manufacturer to broad distributor to more specific local distributor on down to the retailer, if you want to use regular business terms. So the notion that distribution necessarily includes the concept of possession isn't one that comes easily. I agree and disagree. I think what you have to look at here is that Mr. McKenzie and Mr. Ballancourt were in this together. And Mr. McKenzie was bringing it up from Kansas City. They were going to go to the storefront that they owned. And they were going to break it up into one ounce bags of methamphetamine. No, I understand that. But when McKenzie gives the other guy, does he call himself Ballancourt? Ballancourt. Ballancourt, okay. Looks French to me. So when he gives it to Mr. Ballancourt, though, he's, for all he knows, Mr. Ballancourt could drive into the next state. I mean, he's given a box. Mr. Ballancourt, as every reason to believe, contains illegal drugs to him. And, yes, there's this detail in the key, but why isn't that distributing? He's not in custody of it anymore. Two points here. First of all, what we call legal possession, and this court has said this on a number of occasions, is when we're dealing with controlled substances, the criminal milieu matters. But you moved over to possession just then as opposed to transferring an item from A to B to C. Well, then it gets to my second point, which is when Congress passed the Controlled Substances Act, it was very clear that what they wanted to get at and what the evil was is they had a primary evil and a secondary evil. The secondary evil was, look, we have all these people who are possessing it and using it, and that's bad. But the people we really want to punish are the distributors, and those are the people that are moving it down the chain. And here, this wasn't moving it down the chain. But don't we have to look at the statute itself? Sure. And the statute defines distribution as to deliver, and delivery as the actual constructive or attempted transfer of a controlled substance. It doesn't say transfer of possession of a controlled substance. It says transfer of. Yes, and I think to transfer something or to deliver something, you no longer have to have, you have to dispossess yourself of it. But you're saying to transfer, the other person has to take possession of it? Yeah, if I just, if I had a box of methamphetamine, or let's say a defendant had a box of methamphetamine and dispossessed himself of it by, say, throwing it in a river. It's not a transfer. It's not a distribution, not a delivery. But what about a simpler case? What about somebody who's selling iPads or something, and there are all these boxes, and they're all carefully wrapped up, and they're in the back of a truck, and they get moved from the plant or the port of entry if they're imported or however they come in to another place. The truck driver isn't opening up all the boxes. Indeed, it's understood that the truck driver will not open up all of these boxes. That would be regarded as a real problem if they did. And yet the truck driver surely has. They've been transferred. He's part of the distribution chain. So the idea that you've got to get inside the box is what I'm having trouble with. Well, what I would ask you to think about then is that do I transfer or distribute something that I put in a safe deposit box that my bank holds? My bank has custody of it. And it has certain duties toward you when it's in the safe deposit box. So they do. And since you have transferred, it doesn't mean you've transferred ownership. You've probably conducted a bailment or some such thing. But I don't know that that suggests that there's no transfer. Well, then I think we're back to the Controlled Substances Act, which is what they're trying to punish. And what Congress intended to do is each time you bring it down in the chain of distribution, that's the harm it's looking for. That's the crime. Let me ask you this. Suppose we have a guy named Smith. McKenzie gives the key to Smith. Smith makes his way to the store, gives the key to Ballancourt. They get the methamphetamine out. They weigh it up. They bag it up. The police move in. Would Smith be convicted of a distribution offense? No, and I'll tell you why. Really? When Smith and Ballancourt, he was going to attempt to distribute it, and I think when Smith comes in and meets with Ballancourt in the store and they bring the box and the key together, the two of them certainly both possess it with intent to deliver. I mean it's way too much for personal use. Isn't that classic constructive transfer? Smith does. Gives the key to access the box. Yes, but here that would be constructive for Smith. Right, for Smith. But what it comes back to is when you have essentially people at the same level of the supply chain passing it back and forth, each time they pass it back and forth is not a distribution. It's just an odd outcome that Smith could be convicted in my view on that hypothetical and McKenzie cannot. What I would go back to again is the act which shows there you have another intermediary, that you have somebody that's pushing it down the supply chain, and each incremental step down the supply chain, that's a distribution. That's what they wanted to punish. But we have for when essentially confederates at the same level are passing it back and forth, one weighs it, one bags it up, such and such. Passing it back and forth, yes, I transfer it to a confederate who weighs it and then who I take it back and put it in another bag. Those are transfers. But let me vary the facts in this way. Sure. Suppose McKenzie gives Valancourt the box, and the understanding is that Valancourt is going to drive off to some place and break it down and everything because everybody thinks that Valancourt still has a key. And Valancourt gets there and he realizes, oh, darn it, I forgot that I gave McKenzie my key because McKenzie is careless with keys. So he calls a locksmith. The locksmith comes. These aren't the world's most secure things, at least for a professional locksmith, I would assume, if it's a Walmart lockbox. And so the locksmith opens it up, and Valancourt happily cuts it, gets it ready for distribution. Surely in that situation McKenzie has distributed the methamphetamine to Valancourt. Absolutely. Which shows that the key isn't so magical. There are ways around lacking a key. Of course. I think you have to look at the totality of the circumstances here and what their business dealings were and how they acted. If McKenzie hands off all the methamphetamine to Valancourt and says, this is yours, you bag it up, you come back to me with money to pay for it, then we have a distribution. We're done. I'm not here. The trial never happens. But instead law enforcement arrests them. But there's a clear intent to transfer. In Judge Wood's hypothetical, yes. No, no, in the real case, in the parking lot. In the parking lot there's an intent that, yes, McKenzie intends to. He gives the box to Valancourt. Yes, he gives the box. With a plan to go meet at the store. Yes. And he's not giving it all to him. Otherwise they wouldn't have come back to meet at the store to weigh it out and bag it. Also, they've done this before. Evidence in the record is clear that this is not the first time they're doing this. Doesn't that support the distribution argument that this is something they have done in the past? Oh, no. Quite the opposite. I think if you look at what I'll call the 404B deal that took place in Anoka, Minnesota, that shows how they normally go about it, which is they break it down, weigh it into one-ounce bags, and then once all that went to Valancourt and he leaves, that's a distribution. Because then what we have is we have the breakdown and it's going down from Mr. McKenzie in Minnesota for Mr. Valancourt to take to across the border. So it's your view that not until Valancourt actually takes it after it's broken down and leaves that it doesn't become a distribution until then? When he takes it, when Mr. McKenzie intends to and gives it to him with the intent to completely part ways with it, that's when we have a distribution. So the key doesn't matter to your argument then. Is that right? No. I'm saying the key is, I wouldn't come here and say that, yes, oh, the key is the whole thing. What I'm saying is that it's just part of the totality of the circumstances about how they've dealt because they use the same or the identical model of lockbox earlier at the ANOVA deal. All right. Thank you very much. I'll reserve. Thank you. Mr. Stephen. Thank you. May it please the Court, my name is Corey Stephan and I represent the United States in this matter. This is a straightforward case involving distribution of 811 grams of almost pure methamphetamine from Carl McKenzie to Timothy Valencourt, his drug lieutenant and turned confidential informant. This did happen just outside of Ashland, Wisconsin on February 5th of 2017 and the reason it happened outside of town was it happened for McKenzie to dispossess himself of the methamphetamine. If you recall, the record suggests and supports, in fact there's evidence in the record, that McKenzie had verbalized to Valencourt that he thought he was getting pulled over as he was coming into Ashland, Wisconsin. Something similar had happened when he had made a trip down to Kansas City when he was pulled over by a Missouri State trooper and he had told Valencourt weeks earlier that next time we need to have a cover car. Well, so this is all percolating in the back of McKenzie's mind, I'm sure, when he's coming into Ashland and he says that he thought he was getting pulled over. A police officer turned on his lights and actually pulled around McKenzie and was apparently targeting somebody else. So McKenzie wanted to pull off and give Valencourt the methamphetamine at that point in time to dispossess himself of that methamphetamine. His concern was because he was driving a rental car that had Florida plates that it would look out of place in Ashland, Wisconsin in the beginning of February. And his goal was to dispossess himself of that. In the event that he got pulled over, he would not be in possession of those controlled substances. So the legal question, as I understand it, is really, can you be said to have distributed an item to a person who actually has no access to that item? Or do we need some other concept? Because distribution could imply the idea that the person you gave it to has access to it for purposes of dividing it up for further distribution or for purposes of using it or for purposes of, in some other fashion, getting a benefit from it. Whereas if you actually have no access whatsoever, are you a proper distributee? That's a great question. That's what's the question in this case, anyway. It is. Valencourt had access to those drugs. And I think the court was right. But he's locked away from them. So we have a situation in which he once upon a time apparently had a key to this box. I made an assumption a few minutes ago, maybe it's really easy to get a locksmith to come break the box open. I don't know that, as a matter of fact. And if access is important, we have a more difficult case here. Access was actually covered during trial when I asked Special Agent Charlie McBain on my cross-examination, who was called as a defense witness, about, have you ever been able to get inside of these locked boxes before? Have you had to do that in the course of your official duties? And did it require a key? And his testimony was that common household tools can get you inside of these locked boxes. This is not the first time that McKenzie and Valencourt had tried to somehow lock something away to keep it away from law enforcement, but that would also give them trouble getting access to it. If you recall, there was also the theory that at one point they were going to put it inside one of these emergency spare tires in the trunk of the car. And Valencourt was discussing what types of tools he might need to get inside of that.  Nick Delgado As a legal matter, though, is your position that you need to transfer possession? And here the facts show sufficient access, such that there was possession? I thought you were simply saying there needs to be a transfer of the substance. David Altshuler Exactly. And so backing up, the jury instructions read that a person distributes a controlled substance if he delivers it or transfers possession of it. And McKenzie's argument in his theory of defense is essentially trying to rewrite the Seventh Circuit pattern instruction to make that or an and, or to... Mary Striegel Well, the statute is what governs. We have various discussions about the pattern instructions, and sometimes with the best of intention they don't quite capture what the statute says. Judge St. Eve a few minutes ago read from the statute about what distribution entails. David Altshuler Correct. The government agrees with that reading of the statute. It is what the statute is. And it is... Mary Striegel But are you reading possession into the statute? Are you asking us to do it? Because the statute distribution is a delivery, and deliver is defined as the actual constructive or attempted transfer of a controlled substance. So are you reading transfer of possession? Is that required? David Altshuler No, not from the perspective of the person who distributed it. I think if you're talking about the perspective of a person who may have had the drugs possessed with intent to deliver, which is, frankly, that's the bulk of the cases that the defense cites in support of his theory of defense in this case, it looks at it from the perspective of the person possessing the drugs with intent to deliver it. Mary Striegel And it's a mystery to me why the government didn't charge that here. Wouldn't this have been just an open and shut possessed with intent to deliver on McKenzie's part? He has the drugs first before he gives them to violent court. David Altshuler That's a good question. And any time you have a... Mary Striegel I don't know. If you're making life difficult for yourself, it's not anything we can do, but... David Altshuler Well, I think any time you have a long drug investigation, at various points in time, you can charge possessors with intent to distribute, distributions, attempted, conspiracy. I mean, to the point of almost overkill where the government would open itself up to potential... Mary Striegel I'm not saying that you had to charge all of these things. I'm saying if it had been a one-count indictment, like charging McKenzie with possession with intent to deliver, possession with intent to distribute almost two pounds of methamphetamine, that's the case you had. He possessed it. He intended to distribute it. It wouldn't matter at that point whether violent court was the final distribution stop or whether it was really going to be at the store where they were going to open the box up and package it. You've got all sorts of evidence of that. David Altshuler And there were certainly a number of charges that we could have entertained in this case, but the government's position is that it was correctly charged in this case and the jury correctly convicted. If you recall... Mary Striegel Does a distribution charge require the recipient to have some understanding of what's in the box? David Altshuler Yes, and in this case, I think there is. So I want to limit it to this case. In this case, there is. I can't speak on a more broader legal perspective, but in this case, in fact, the body wear that violent court was wearing alongside of the highway going into Ashland, he asked McKenzie, is the stuff in the box? And McKenzie acknowledged, yes, it was. And this is supported by a number of phone calls over a number of weeks, business plans, et cetera. So both of those participants at that point in time, they acknowledged what was in the box. They acknowledged what was going to be distributed, delivered. And keep in mind, this is delivery or transfer of possession. And the government believes in this case that under both of those means of proof that we have sufficient evidence to certainly find him guilty on his motion to acquit. And on the theory of defense instruction, defendants are entitled to theory of defense instructions if they meet certain factors. The first of which is the instruction must represent a correct statement of the law. The defendant's theory of defense in this case would have invited and asked district court to instruct the jury on a number of factors that are just simply incorrect in the law itself. The first of which is the instruction that distribution is a transfer of possession from one person to another. Now, that is perhaps half right, but inasmuch as it neglects and cuts out the deliver aspect, it is wrong and it is not an accurate statement on the law. And as I think the court had mentioned in questions to Mr. Moyer, they also were asking that the district court instruct the jury that they needed to delve into whether or not valent court had the ability to steal this metaphysical possession that sometimes courts have dealt with when talking about possession with intent to distribute cases, not delivery cases. And the instruction also would have asked the district court to instruct the jury essentially, not essentially, but to acquit and find Mr. McKenzie not guilty if the jury were to find that valent court were merely and simply acting as a courier to bring the drugs from the parking lot to the store. And now this district's cases, as well as across the nation, have understood and And I think if this argument were taken to its logical end and applied in district courts across this circuit, it would lead to the absurd result of insulating members of drug trafficking organizations merely because one person had the key, the other person had the box, and the drugs. So if the court has any other questions, I'm more than willing to entertain. Otherwise, the government rests on its feet. All right. Thank you very much. Thank you. Mr. Moyers, does he have time left? I'll give you a minute, Mr. Moyers, if you need to respond. I'll take the last part of what he said first, which my friend Mr. Stephan said first, which is, no, there aren't going to be absurd results. There are all sorts of tools in the toolkit to punish and arrest Mr. McKenzie at any time during this conspiracy and how this went on. Second of all, in case it wasn't clear, and I've had this conversation with Mr. McKenzie, if he gets an acquittal here, he's still on the hook for that Anoka deal, and that is very strong evidence of a distribution. And so the court shouldn't get the impression that Mr. McKenzie is out of hot water here if it chooses to look at the statute the way that it's written. I would finally say, with my last little bit here, is that the government had choices and they chose this. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.